UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

                Plaintiff,

v.

SCOTT WILLIAM SUTHERLAND, et al.

                Defendants.
_____/

Case No. 11-20129

HON. ROBERT H. CLELAND

UNITED STATES OF AMERICA,

                Plaintiff,

v.

JEFF GARVIN SMITH, et al.

              Defendants.
_____/

Case No. 11-20066

HON. ROBERT H. CLELAND

UNITED STATES OF AMERICA,

                Plaintiff,

v.

SMILEY VILLA,

                Defendant.
_____/

Case No. 12-20387

HON. ROBERT H. CLELAND

I, Emma M. Greenwood, declare and state as follows:

    1.    I am a Coordinating Discovery Attorney (CDA) based in New York, New York.  I make the following statements based upon my personal knowledge, information and belief.

    2.    My position stems from my experience over the last six years assisting CJA counsel as a court-appointed associate in over twenty cases that involve large volumes of

electronic discovery. The charges alleged in the cases I've worked on vary widely. In all of the cases I've worked on, I have spent a substantial amount of time learning how best to identify and organize discovery for efficient and cost-effective review.

3. I have also served as a faculty member for the Administrative Office of U.S. Courts, Office of Defender Services, Training Branch, addressing national technology policies, strategies, and methods to assist court-appointed counsel. I have also been a Continuing Legal Education speaker on technology support. I have made presentations to CJA panel lawyers and private counsel.

4. I have recently been appointed as a CDA on the following cases:

Southern District of New York:

- *U.S. v. Branch*, et al., 12-CR-00031-VM (60 defendant drug conspiracy case);
- *U.S. v. Climico*, et al., 11-CR-00974-CM (12 defendant drug conspiracy case);
- *U.S. v. Sierra*, et al., 11-CR-1032-PAE (50 defendant drug conspiracy case);
- *U.S. v. Williams*, et al., 12-CR-111-CS (31 defendant drug conspiracy case);
- 

Northern District of Ohio, Western Division:

- *U.S. v. Elkafrawi*, et al., 12-CR-00262-DAK (18 defendant drug conspiracy case);

5. My role as a CDA is to provide support services to defense counsel by looking for cost-effective methods to organize large amounts of discovery. My work helps avoid the realistic potential of hundreds of hours of duplicative time spent by defense counsel and their staff either learning how to use technology for their case or paging through large volumes of materials. I also help avoid unnecessary expenditure of services and costs. I am familiar with many third party vendors in the country and have interviewed many to become familiar with their services and costs.

6.      Typically, upon my appointment, I survey counsel on their technology experience, how they would like to review discovery, the parameters of what discovery may be important (such as by dates, business entities, people), and the need to work collaboratively with their clients or each other.  I also examine available resources and costs for coding discovery and performing quality control checks on work performed by vendors.  Based upon the input I receive, I recommend a strategy that would best address their needs and be cost efficient.

10.      The work can be extensive.  As a practice, we catalog the receipt of all discovery, examine it for corrupted or missing files, break up scanned documents that may be many documents combined into one image, convert odd format discovery items into a form that can be reviewed by counsel, make scanned documents searchable through optical character recognition (OCR), and ensure bates numbers are properly recorded.

11.      As part of my responsibilities as CDA, I look for the most cost-effective methods to organize discovery.  I consider the volume of discovery and whether the materials are comprised of more than just documents.

12.      We first look to use the most inexpensive and familiar programs such as Excel.  With an Excel spreadsheet, we itemize the discovery on the spreadsheet.  Reviewers will then add information, much like adding data into database fields, which would include document dates, Bates numbers, defendant names, document type, event dates, and other information that would assist a defense counsel to readily sort through the materials to find the discovery that is most pertinent to their clients.  We also hyperlink each discovery item.  Therefore, instead of the lawyers looking through the Excel spreadsheet and then navigating through multiple discs to locate that particular discovery item, they can click on the hyperlink

and the document will appear, the photograph will come up, or the audio or video file will play.

13.     When provided with line sheets that correspond to wiretap audio files, we associate the appropriate line sheet with each wiretap audio file.  In past cases we have used Excel to produce the spreadsheet, but there are web-based options to host greater volumes of data.  The spreadsheet includes a hyperlink to the wiretap and, next to it, a hyperlink to the line sheet.  Defense counsel can sort through the line sheets to find the ones that are important to their client by the phone number being called, the phone number the call is being made from, defendant names, and the like.

14.     For cases with great volumes amounts of data, we may recommend the use a web-based document repository with an Early Case Assessment feature to cull out unnecessary materials.  The purpose of this is to contain costs and time.  We help set the criteria for the removal of data and help train lawyers to use the program themselves.  I typically interview three to six companies and ask them to bid for the work.  I also check references.  Based on the service, costs and references, I will make a recommendation to counsel and to the Court.

15.     Once a reduced discovery population is created, I conduct a similar evaluation and recommendation for web-based document repositories (databases).  Additionally, I look for ease of use and features that allow counsel and their clients to work collaboratively.

16.     To ensure the discovery was properly loaded into the database, we select a collection of materials we know were uploaded.  We search for those documents to make sure they were properly indexed into the database.  We also perform random checks on documents to make sure all were properly OCRd.

17.     Because OCR searching is less than 100% accurate, it is a common practice to code all data.  Objective coding requires reviewers to examine each discovery item and enter data on dates, names, document type and the like into fields associated with each document.  We establish the types of fields to be coded and work with the vendor to create other features on the database so that counsel may mark the importance of any particular documents.  Objective coding is a time consuming process, but without it, critical documents could be missed.

18.     My time is paid by the Administrative Office of the U.S. Courts, Office of Defender Services.

19.     I provide advice to federal criminal defense lawyers across the country, which helps me learn more about the issues inherent to complex discovery cases.  In addition, I have become well versed on providing technology support.  It would be difficult for any lawyer to adjust their practice to deal with the technology issues for a complex discovery case and still dedicate the necessary time to the more substantive matters.  My role is to provide tools that allow them to focus on the facts and legal issues of the case.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

DATED this 11th day of October, 2012, at New York, New York.

/s/
Emma M. Greenwood
299 Broadway, Suite 802
New York, NY 10007
p: (212) 227-5906
f: (212) 227-5907
emmagreenwoodesq@gmail.com