**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

_____

UNITED STATES OF AMERICA,

        Plaintiff,

v.

                                         Case No. 11-20129

DAVID THOMAS ROBERTS,

        Defendant.
_____/

**OPINION AND ORDER DENYING DEFENDANT'S EMERGENCY MOTION TO REDUCE SENTENCE**

Defendant David Thomas Roberts pleaded guilty to Racketeer Influenced and Corrupt Organizations ("RICO") conspiracy, 18 U.S.C. §§ 1962(d) and 1963(a). On September 19, 2016, the court sentenced Defendant to 180 months imprisonment. (ECF No. 1968, PageID.29801.) Defendant was detained starting in March 2012 and his projected date of release is December 14, 2024. (ECF No. 2521, PageID.42445.)

Defendant filed *pro se* an "[Emergency] [Motion] to Reduce Sentence [P]ursuant to 18 U.S.C. § [3582(c)(1)(A)]." (ECF No. 2519.) He argues that the current risk of contracting the Coronavirus Disease ("COVID-19") while detained at FCI Danbury, in Danbury, Connecticut warrants a reduction of his sentence to time served. The government has filed a response. (ECF No. 2521.) Upon review of the record, the court will deny Defendant's motion.

A court may reduce a term of imprisonment if it determines "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A). The court must also weigh the sentencing factors provided under 18 U.S.C. § 3553(a) and

determine if a sentence reduction "is consistent with applicable policy statements issued by the Sentencing Commission." *Id.*

U.S. Sentencing Guidelines Manual § 1B1.13 (U.S. Sentencing Comm'n 2018) is the "applicable policy statement[]" with which courts must comply. 18 U.S.C. § 3582(c)(1)(A). Section 1B1.13 of the Sentencing Guidelines explains that a defendant must "not [be] a danger to the safety of any other person or to the community" under 18 U.S.C. § 3142(g) and must fit within at least one of four categories of "extraordinary and compelling reasons." Those categories are: "Medical Condition of the Defendant," "Age of the Defendant," "Family Circumstances," and "Other Reasons." The category of "Other Reasons" requires a determination from the Director of the Bureau of Prisons ("BOP") that "there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons" outlined in the other three categories. U.S. Sentencing Guidelines Manual § 1B1.13 cmt. n.1(D). The BOP has released Program Statement 5050.50 to guide its determination of extraordinary and compelling circumstances. Federal Bureau of Prisons, U.S. Department of Justice, Program Statement 5050.50: Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582 and 4205(g) (2019).

In all, a defendant seeking compassionate release must present extraordinary and compelling circumstances, must have § 3553(a)'s sentencing factors weigh in his favor, must not be a threat to others as determined by § 3142(g), and must fit within one of the four categories in § 1B.13 of the Sentencing Guidelines. 18 U.S.C. § 3582(c)(1)(A); U.S. Sentencing Guidelines Manual § 1B.13; *United States v. Sapp*,

2

Case No. 14-20520, 2020 WL 515935, at *2 (E.D. Mich. Jan. 31, 2020) (Leitman, J.) (summarizing compassionate release requirements).

There are two procedures by which the court may hear motions for compassionate release. First, the BOP can move for compassionate release. 18 U.S.C. § 3582(c)(1)(A). That procedure is not applicable here. The BOP did not move for or endorse Defendant's release.

Second, after the passage of the First Step Act in 2018, Defendant can file a motion on his own. 18 U.S.C. § 3582(c)(1)(A). However, he may do so only "after [he] has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on [his] behalf or the lapse of 30 days from the receipt of such a request by the warden of [Defendant's] facility, whichever is earlier." *Id.* Thus, before the court may decide a motion for compassionate release, Defendant must first exhaust administrative remedies. He has failed to do so.

Defendant contends that he submitted a request for compassionate release to the warden at FCI Danbury on April 24, 2020. (ECF No. 2519, PageID.42435.) He filed his motion on May 4, 2020, ten days later. Defendant states that he did not receive a response from the warden by the time of the filing. (*Id.*) The government asserts that Defendant's request has since been denied. (ECF No. 2521, PageID.42451.) There are no allegations and there exists no evidence in the record that Defendant exhausted his administrative rights within the BOP after his request was denied.

Defendant's claim is not ripe. The plain text of 18 U.S.C. § 3582(c)(1)(A) states that Defendant must either exhaust all administrative appeals or wait thirty days before filing a motion for compassionate release; Defendant has done neither. *Grand Trunk W.*

*R.R. Co. v. U.S. Dep't of Labor*, 875 F.3d 821, 824 (6th Cir. 2017) (quoting *King v. Burwell*, 135 S. Ct. 2480, 2489 (2015)) ("If the statutory language is plain, we must enforce it according to its terms."). Defendant's motion fails for lack of exhaustion. *Ross v. Blake*, 136 S. Ct. 1850, 1857 (2016) ("[M]andatory exhaustion statutes . . . establish mandatory exhaustion regimes."); *Hoogerheide v. I.R.S.*, 637 F.3d 634, 639 (6th Cir. 2011) (Courts lack discretion to waive "a congressionally established exhaustion imperative, not a judicially created one.").

The Sixth Circuit has endorsed this conclusion. In *United States v. Alam*, a federal prisoner sought compassionate release in district court after requesting relief from his prison warden. --- F.3d ----, Case No. 20-1298, 2020 WL 2845694, at *1 (6th Cir. June 2, 2020). The prisoner had not exhausted administrative appeals and waited only ten days after submitting his request to the warden before moving for compassionate release. *Id.* The district court dismissed without prejudice the prisoner's claims for failure to exhaust. *Id.* The Sixth Circuit affirmed the district court, reasoning that § 3582(c)(1)(A) included a "mandatory claim-processing rule[]" that "must be enforced." *Id.* at *3 (quoting *Hamer v. Neighborhood Hous. Servs. Of Chi.*, --- U.S. ----, 138 S. Ct. 13, 17 (2017)). The Sixth Circuit added that § 3582(c)(1)(A)'s exhaustion requirement was in place for good reason. *Id.* at *4. "It ensures that the prison administrators can prioritize the most urgent claims . . . [and] that they can investigate the gravity of the conditions supporting compassionate release and the likelihood that the conditions will persist." *Id.*

4

Defendant insists that the court must decide his motion despite his failure to exhaust. (ECF No. 2519, PageID.42435-36.) Even if it were possible for the court to waive exhaustion, Defendant's motion would fail on the merits.

Considering the sentencing factors under 18 U.S.C. § 3553(a), Defendant's release is not warranted. Title 18 U.S.C. § 3553(a) provides that "[a] court, in determining the particular sentence to be imposed, shall consider[:]"

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct;
>>
>> (C) to protect the public from further crimes of the defendant; and
>>
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established . . .
>
> (5) any pertinent policy statement . . .
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

Defendant engaged in highly organized narcotics distribution for many years. He was a member of an outlaw motorcycle gang, Devil's Diciples [sic], which was deeply and profitably involved with manufacturing, using, and distributing methamphetamine

("meth"), among a myriad of other racketeering crimes and miscellaneous anti-social behavior, including obstruction of justice, subornation of perjury, and murder.

Defendant became a member of the gang in April 1995, when he was twenty-one years old. (ECF No. 2521, PageID.42447.) From then until July 2012, Defendant, along with other members, manufactured, distributed, and possessed with the intent to distribute more than fifteen kilograms of meth across at least seven states. (*Id.*, PageID.42447-48.) Profits from drug sales were funneled into the larger Devil's Diciples organization and funded the organization's drug manufacturing and ongoing criminal activity. (*Id.*, PageID.42448.)

In February 1996, Defendant pleaded guilty to illegal marijuana trafficking after attempting to sell a pound of marijuana to an uncover police officer. He was sentenced to two years of probation. Soon after, in September 1998, Defendant was convicted of false information and was sentenced to six months of probation.

In 2000, Defendant took a leadership role in a Michigan chapter of the Devil's Diciples. (*Id.*, PageID.42449.) He was given the title "Vice President of the Westside Chapter." (*Id.*) The "Westside Chapter" participated in the production and distribution of meth in and around Detroit, Michigan. (*Id.*)

In 2002, an eight-year-old girl reported that Defendant had molested her. He was arrested in 2004, was convicted of criminal sexual conduct, and was sentenced to thirty months to ten years imprisonment. The Michigan Department of Corrections released Defendant on parole in March 2009 and discharged him in March 2011.

As soon as Defendant was released into the public, and while still on parole, he resumed his role in the Devil's Diciples and the illegal meth trade. (*Id.*, PageID.42449-

6

50.) Between 2010 and March 2012, Defendant manufactured meth at residences in Roseville, Michigan and Clinton Township, Michigan and two residences in Warren, Michigan. (*Id.*, PageID.42450.) Defendant produced between four and ten grams of "pure" meth per month during this time period. (*Id.*)

Defendant also participated in acts of violence with the Devil's Diciples. On one occasion, Defendant agreed with his fellow gang members to assault members of a rival gang. Defendant joined an altercation at a bar in Detroit, where he repeatedly struck a rival gang member.

To support and protect the Devil's Diciples, Defendant engaged in obstruction of justice. In 2011, when another member of the Devil's Diciples was arrested for criminal charges in federal court, Defendant sought to fabricate evidence to support the gang member's defense. This included fraudulently backdating a letter to prove the gang member's residence.

For the duration of these events, Defendant was still on probation for his prior crimes. He was finally arrested in March 2012. (*Id.*, PageID.42445, 42450.)

Defendant has a long history of serious criminal activity. He was an active participant in an extensive conspiracy to create, distribute, and sell highly addictive and deadly narcotics across Michigan and in different regions of the United States. Defendant's chosen method of meth production risked explosions, exposing others to the possibility of unforeseen injury or death. Minors were present or resided in several locations of meth manufacturing. On at least one occasion, an operation in which Defendant was involved exploded, leaving noticeable fire damage to the building used. (*Id.*, PageID.42450.) Defendant participated in meth production and distribution for

almost two decades and obtained a leadership role in the process. He has been convicted of multiple crimes, including for sexual assault of a young girl, and was on probation when he committed the underlying acts supporting his RICO conspiracy conviction. The Devil's Diciples, to whom Defendant provided his services and sent profits from drug sales, was a vicious motorcycle gang, willing and able to engage in heinous acts of violence. On numerous occasions Devil's Diciples members committed assault, attempted murder, and first-degree murder.

In later years, however, Defendant renounced his membership in the Devil's Diciples and in various ways assisted the government in its investigation of the gang. (*Id.*, PageID.42450, 42466; ECF No. 2519, PageID.42439.) He has apparently remained well behaved while in prison. (ECF No. 2521, PageID.42466; ECF No. 2519, PageID.42439.) While commendable, and certainly pointing in a positive direction, these recent undertakings do not absolve Defendant of the egregious behavior he consistently engaged in for the better part of twenty years. His sexual assault of an eight-year-old girl was especially repulsive. His illegal narcotics trafficking risked the health and safety of the community on a regular basis. The behavior of Defendant after his most recent crimes were discovered by authorities, and since being placed in a monitored and controlled prison environment, cannot change his history and prior record in free society. The court sentenced Defendant in September 2016 to 180 months imprisonment; he still has over four years of imprisonment to serve. Considering the "the nature and circumstances of the offense and the history and characteristics of [Defendant]," release at this time is not appropriate. 18 U.S.C. § 3553(a)(1).

"To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," Defendant should complete his term of imprisonment. 18 U.S.C. § 3553(a)(2)(A). Defendant worked to advance the violent and criminal purposes of the Devil's Diciples for many, many years, and he actively participated in the gang's meth distribution. Defendant's expected release date is December 14, 2024. (ECF No. 2521, PageID.42445.) Having been detained only since March of 2012, his release now, more than four years early, would not adequately reflect the seriousness of his crimes, nor would it sufficiently encourage respect for law, both from Defendant and other career criminals like him, and it would not provide just punishment for the harms Defendant unquestionably inflicted on others in society. 18 U.S.C. § 3553(a)(2)(A).

Additionally, completing Defendant's term of imprisonment would "afford adequate deterrence to criminal conduct." 18 U.S.C. § 3553(a)(2)(B). Defendant chose a life of crime, and did so at a young age. He has been convicted of multiple felonies, including marijuana distribution and criminal sexual assault. He was imprisoned for over four years for his sexual assault in 2004, yet he returned to crime quickly and effectively. The actions underlying his current conviction for RICO conspiracy were committed while Defendant was on probation. Prior punishments were simply ineffective at deterring Defendant's continued criminal behavior. Defendant has been imprisoned for eight years. The court believes four more years of incarceration will better impress upon him the desperate need to rethink priorities and develop law-abiding habits, lest he serve the remainder of his life in prison for yet another crime.

An early release of four years would also not "protect the public from further crimes." 18 U.S.C. § 3553(a)(2)(C). Defendant assures the court that has no intent on returning to his old ways. (ECF No. 2519, PageID.42439.) It is encouraging that Defendant renounced association with the Devil's Deciples and chose to assist the government in investigating and bringing to light the gang's extensive network of wrongdoing. (ECF No. 2521, PageID.42450, 42466; ECF No. 2519, PageID.42439.) Nonetheless, it is possible for Defendant, upon leaving confinement, to commit additional crimes. Defendant has a history of violence and improper sexual behavior. When released from prison in 2009, he almost immediately began producing and distributing meth. The criminal behavior leading to his RICO conspiracy conviction occurred while on probation. From a review of the record, Defendant's early release is not in the best interest of public safety. 18 U.S.C. § 3553(a)(2)(C).

Finally, the court's original sentence is well within "the sentencing range established." 18 U.S.C. § 3553(a)(4). A four-year early release is not. Defendant was classified as a career offender under U.S. Sentencing Guidelines Manual § 4B1.1 and received a criminal history category of VI. The guideline range was life imprisonment. Defendant was given a notably reduced sentence, only 180 months, due to the government's request for a downward departure under U.S. Sentencing Guidelines Manual § 5K1.1, based on Defendant's cooperation. (ECF No. 2421, PageID.42450.) Although the court sentenced Defendant to a term of imprisonment lower than he otherwise would have received, his original guideline range counsels against release four years prior to the completion of his reduced sentence.

Defendant contends that the risk of contracting COVID-19 justifies his release despite the severity of his previous actions. (ECF No. 2519, PageID.42439.) He asserts that FCI Danbury has thirty confirmed cases of COVID-19 among inmates and over forty among staff. (*Id.*, PageID.42435.) Defendant's cellmate allegedly tested positive. (*Id.*, PageID.42436.) The government does not contest these claims.

Medical records indicate that Defendant is obese and has sleep apnea, hypertension, and hyperlipidemia, as well as "[o]ther specified symptoms and signs involving circulatory and respiratory systems." (ECF No. 2523-1, PageID.42486.) Defendant also claims he has chronic obstructive pulmonary disease ("COPD"), but no such diagnosis is included in his medical records. (ECF No. 2519, PageID.42437.)

While the facts Defendant presents are concerning, the BOP has instituted precautionary measures to mitigate the spread of COVID-19 in the federal prison system, including FCI Danbury. Inmates' internal movement is suspended, subject to narrow exceptions such medical examinations; newly arriving inmates are screened for exposure risk and symptoms; symptomatic inmates, as well as asymptomatic inmates with exposure risk, are isolated; social visits have been canceled. Federal Bureau of Prisons, *BOP Implementing Modified Operations* (last visited May 29, 2020), https://www.bop.gov/coronavirus/covid19_status.jsp. (ECF No. 2521, PageID.42452-53.)

Inmates and staff at FCI Danbury may have contracted COVID-19. Nonetheless, BOP officials have created numerous practices to try to protect Defendant, and other inmates like him, from contracting the disease. Further, Defendant will be provided medical care if he were to contract COVID-19, which may not be the case were he

released. If released now, Defendant would enter free society, where there are tens of thousands of confirmed cases, depending on the location, and not have the monitoring and access to medical care he receives at FCI Danbury. State of Michigan, *Coronavirus: Michigan Data* (last visited May 29, 2020), https://www.michigan.gov/coronavirus/0,9753,7-406-98163_98173---,00.html (detailing reported COVID-19 cases across Defendant's home state of Michigan). Most importantly, the threat of COVID-19 and the possibility that Defendant may acquire the disease and develop serious complications cannot outweigh the serious, repeated, and highly anti-social behavior Defendant has engaged in for most of his life. For many years, Defendant spread deadly and addictive narcotics and helped fund a violent criminal organization. He committed acts of violence and obstructed justice. Multiple felony convictions stand on his record, including an egregious sexual assault. Sentencing guidelines recommended that Defendant serve life imprisonment. With all these facts in mind, the court will not release Defendant four years early, and his motion will be denied. Accordingly,

IT IS ORDERED that Defendant's "[Emergency] [Motion] to Reduce Sentence [P]ursuant to 18 U.S.C. § [3582(c)(1)(A)]" (ECF No. 2519) is DENIED.

        s/Robert H. Cleland      /
        ROBERT H. CLELAND
        UNITED STATES DISTRICT JUDGE

Dated: June 8, 2020

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, June 8, 2020, by electronic and/or ordinary mail.

        s/Lisa Wagner      /
        Case Manager and Deputy Clerk
        (810) 292-6522

S:\Cleland\Cleland\JUDGE'S DESK\C2 ORDERS\11-20129.ROBERTS.EmergencyMotiontoReduceSentencePursuantto18U.S.C.3582(c)(1)(A).RMK.RHC.2.docx